[No. 27125. *En Banc.* April 23, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Victor A. Meyers, as Lieutenant-Governor, Plaintiff,* v. BELLE REEVES, *as Secretary of State, Respondent.*[1]

*Victor A. Meyers, pro se.*

*The Attorney General, L. C. Brodbeck* and *John E. Belcher, Assistants,* for respondent.

MILLARD, J.—This is an original application in this court for a peremptory writ of mandamus requiring the secretary of state to affix the seal to, and file and publish, a proclamation of the lieutenant-governor (alleged acting governor of the state) calling the legislature into extraordinary session. The record, consisting of the application and supporting affidavit for writ of mandate and return and answer to order to

[1]Reported in 78 P. (2d) 590.

show cause why the application should not be granted, discloses the following facts:

On April 14, 1938, Clarence D. Martin, the duly elected and qualified governor of the state of Washington, left the state of Washington, to which he returned April 20, 1938, at 7:52 o'clock a. m., and from which he has not since departed.

On April 14, 1938, Victor A. Meyers, the duly elected and qualified lieutenant-governor of the state of Washington, was absent from the state of Washington and remained absent therefrom until April 19, 1938. On the date of his return to this state, the relator signed, as "Acting Governor of the state of Washington," a paper (at the end of which is the signature of a notary public "In and for the state of Washington residing in Seattle") calling for the convening of the legislature in extraordinary session at Olympia on April 25, 1938, at ten o'clock a. m. The relator called at the office of the secretary of state in Olympia April 19, 1938, at 5:10 o'clock p. m., which was after office hours, and found the office closed, whereupon he returned to Seattle. At eight o'clock a. m. the following day, April 20, 1938, when relator called at the office of the secretary of state, his request that the great seal of the state be affixed to the above-described purported proclamation and that his proclamation be filed and published was refused, for the reason that the governor, Clarence D. Martin, returned to the state of Washington eight minutes prior to the relator's call on the secretary of state, and the governor had, by long-distance telephone from Spokane, promptly advised the secretary of state of his return.

Relator contends that, as the governor may, on extraordinary occasions, convene the legislature by proclamation (Art. III, § 7), the lieutenant-governor may do likewise when the governor is absent from the

state, in view of the constitutional provision (Art. III, § 10, as amended by amendment 6) that the duties of the office of governor shall devolve upon the lieutenant-governor in case of the removal, resignation, death, or disability of the governor.

The relator called at the office of the secretary of state eight a. m. April 20, 1938, to promulgate, to issue, a proclamation convening the legislature in extraordinary session. His purpose was to have the secretary of state authenticate officially, to attest the truth of his writing dated April 19, 1938. When that record was presented at the office of the secretary of state, the duly elected and qualified governor, Clarence D. Martin, was not disabled nor was he absent from the state. The relator was not then the acting governor, hence the secretary of state could not be required to certify as true that which she knew was untrue.

Until attested by the secretary of state, there could be no promulgation of the call for an extraordinary session of the legislature. The signature and seal of the notary public could not be substituted for the attestation of the secretary of state. The purported proclamation dated April 19, 1938, until authenticated, was of no force or effect. Analogous thereto is an acknowledged but undelivered conveyance of property. When, on April 20, 1938, relator requested the secretary of state to attest the truth of his proclamation, the duly elected and qualified governor was within the state, which precluded, as stated above, the attestation the relator sought.

The application for a peremptory writ of mandate is denied.

HOLCOMB and BLAKE, JJ., concur.

MAIN and BEALS, JJ. (concurring in the result)— We concur in the opinion written by Judge Millard except as to the two sentences in the latter part thereof reading as follows:

"Until attested by the secretary of state, there could be no promulgation of the call for an extraordinary session of the legislature."

And,

"The purported proclamation dated April 19, 1938, until authenticated, was of no force or effect."

ROBINSON, J. (concurring in the result)—I concur in the result reached by the majority. As I read the opinion, it holds, in substance, that the legislature of the state of Washington cannot legally assemble in extraordinary session next Monday because Governor Martin crossed from Idaho into Washington in an airplane eight minutes before Lieutenant-Governor Meyers arrived at the office of the secretary of state in Olympia. I think the decision can, and should, be rested upon a more substantial legal ground.

The constitution regulated the succession in the following manner:

"In case of the removal, resignation, death, or disability of the governor, the duties of the office shall devolve upon the lieutenant-governor, and in case of a vacancy in both the offices of governor and lieutenant-governor, the duties of governor shall devolve upon the secretary of state, who shall act as governor until the disability be removed or a governor be elected." Const., Art. III, § 10.

In 1890, the legislature passed an act two sections of which appear in Remington's Revised Statutes, as follows:

"In case the governor absents himself from the state, he shall, prior to such departure from the state, notify the lieutenant-governor of such proposed absence, and during such absence of the governor from the state, the

lieutenant-governor shall perform all the duties of the governor." Rem. Rev. Stat., § 10985 [P. C. § 6656].

"Every provision in the laws of this state in relation to the powers and duties of the governor, and in relation to acts and duties to be performed by others towards him, extends to the person performing for the time being the duties of the governor." Rem. Rev. Stat., § 10986 [P. C. § 6655].

It may be noted in passing that, if this legislation was constitutional when enacted and is not superseded by the 6th amendment to the constitution, it effectually answers the contention so much stressed on the oral argument that the governor retains his powers when absent from the state. But with that matter we are not now immediately concerned.

Suppose that, at any time during the twenty years between 1890 and the adoption of the 6th amendment to § 10 of Art. III of the constitution in 1910, both the then governor and lieutenant-governor had contemporaneously absented themselves from the state, who then would have been legally qualified to perform the governor's duties? The answer must be, no one, unless the words in § 10, Art. III of the constitution, "disability" and "vacancy," be construed to cover absence from the state. If so construed, and I think that is the proper construction, the secretary of state would have been qualified, but if he had also left, the ship of state would have been wholly without legally qualified executive direction.

It was no doubt a realization of this danger which induced the legislature of 1909 to enact chapter 181, Laws of 1909, p. 642, submitting an amendment to § 10 of Art. III which was adopted by the vote of the people in November, 1910. The amendment reads as follows:

"In case of the removal, resignation, death or disability of the governor, the duties of the office shall devolve upon the lieutenant-governor; and in case of

a vacancy in both the offices of governor and lieutenant-governor, the duties of the governor shall devolve upon the secretary of state. In addition to the line of succession to the office and duties of governor as hereinabove indicated, if the necessity shall arise, in order to fill the vacancy in the office of governor, the following state officers shall succeed to the duties of governor, and in the order named, viz.: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. In case of the death, disability, failure or refusal of the person regularly elected to the office of governor to qualify at the time provided by law, the duties of the office shall devolve upon the person regularly elected to and qualified for the office of lieutenant-governor who shall act as governor until the disability be removed, or a governor be elected; and in case of the death, disability, failure or refusal of both the governor and the lieutenant-governor elect to qualify, the duties of the governor shall devolve upon the secretary of state; and in addition to the line of succession to the office and duties of governor as hereinabove indicated, if there shall be the failure or refusal of any officer named above to qualify, and if the necessity shall arise by reason thereof, then in that event in order to fill the vacancy in the office of governor, the following state officers shall succeed to the duties of governor in the order named, viz.: Treasurer, auditor, attorney general, superintendent of public instruction and commissioner of public lands. *Any person succeeding to the office of governor as in this section provided, shall perform the duties of such office until the disability be removed, or a governor be elected and qualified;* and if a vacancy occur more than thirty days before the next general election occurring within two years after the commencement of the term, a person shall be elected at such election to fill the office of governor for the remainder of the unexpired term." (Italics mine.)

It is to be supposed that the legislature intended, in proposing this amendment, to cover every possible contingency. It will be noted that all of the amendment down to the sentence italicized is designed to

make the succession plain. No longer should the state be left without someone legally qualified to perform the duties of governor, even if the governor, lieutenant-governor, and secretary of state are contemporaneously absent, for, as the amendment says, "If the necessity shall arise . . . in order to fill the vacancy in the office of governor," then the treasurer, auditor, attorney general, superintendent of public instruction, and commissioner of public lands, shall fill it in that order. Having thus provided for the filling of the vacancy, the amendment goes on to carefully provide the substitute's term of office in the following manner:

". . . Any person succeeding to the office of governor as in this section provided, shall perform the duties of such office until the disability be removed, or a governor be elected and qualified; . . ."

It was admitted by the relator, who ably argued his own case before us, and by the attorneys for the respondent also, and has been admitted by everyone whom I have heard discuss the matter, that Mrs. Reeves, the secretary of state, succeeded to the office of governor when the governor left the state. If that is so, she did so "as in this section provided," for there is no other law under which she could assume the office. The law then, when applied to the facts and realities of the situation, intended that Mrs. Belle Reeves "shall perform the duties" of the governor until his "disability be removed;" that is, until he returns to the state. I am aware that the validity of this theory of the law depends upon the construction to be given to the words "disability" and "vacancy." It is not a sound theory if disability does not include lack of power to act due to absence from the state.

Cases were cited on the oral argument wherein the word "disability" was not so construed, when used in statutes providing that judges might complete certain

unfinished work of their brethren who were under disability. The authorities, however, are not unanimous on that question. But, however that may be, words used in statutes must be construed in the light of the statutory purpose and the end sought. If a judge leaves the state, ordinarily his work can await his return, but the state must have a qualified executive at all times. If the word "disability" is given the narrow construction contended for, then one need only read the first sentence of the amendment to realize that, unless absence from the state is a disability and creates a vacancy, Mrs. Reeves had no right whatever to assume the governor's duties; for, assuredly, neither Governor Martin nor Lieutenant-Governor Meyers was removed, or died, or resigned.

It must be remembered that there is no other constitutional provision or statute governing the matter. Mrs. Reeves got her right to act through the words "disability" or "vacancy" or not at all. By the same token, it must follow that, if the words receive the narrow construction, the law is in the same unfortunate condition that it was before the amendment was passed, in so far as providing a qualified person to attend to the duties of governor when both the governor and lieutenant-governor leave the state is concerned. None of the other state officers could assume the office in such a contingency.

I cannot escape the conviction that, when the legislature proposed this amendment, they intended to make it certain, as far as was humanly possible, that, if the people adopted it, the state should never be at a loss for some qualified person to perform the duties of the executive. I feel equally confident that the legislature did not intend that, if all the state officers left except the commissioner of public lands, the superintendent of public instruction could return and push

him out of the governor's chair, to be in turn pushed out by the attorney general on his return, and he by the auditor, and the auditor by the treasurer. The amendment gives the person who succeeds to the duties of governor a term of office.

". . . Any person succeeding to the office of governor as in this section provided, shall perform the duties of such office until the disability is removed, or a governor be elected and qualified; . . ."

What disability? Plainly, the "disability of the governor," the only disability mentioned in the statute, the disability of the person to whose duties the incumbent succeeded.

The theory of the law which I have above set forth would completely carry out the purpose which I feel we must ascribe to the legislature when it proposed the amendment and to the people who voted for it. If the theory were adopted, upon the governor's return from an absence from the state, he would go to his office and take over his duties from any person who had lawfully succeeded him, just as a business executive takes over his duties after an absence, and thus make wholly unnecessary the somewhat fantastic conception that he in some way snatches his duties out of the air and begins their performance as he crosses the state line in an airplane at a level of some three or four thousand feet.

I agree that the writ should be denied, but I think the denial should be placed upon the ground that Lieutenant-Governor Meyers did not succeed to the office of governor when he returned to the state and had no authority whatever to issue the proclamation.

STEINERT, C. J. (concurring in the result)—I concur with Judges Main and Beals, and also with the views expressed by Judge Robinson.

512

GERAGHTY, J. (concurring)—While I concur in the denial of the writ for the reasons stated in the opinion, I am strongly of the view that Governor Martin's temporary absence from the state, on official business at the nation's capital, did not create a situation authorizing the execution of his duties either by the lieutenant-governor or the secretary of state, or any other of the state officers in the line of succession. As the opinion must be filed immediately, I have no time to elaborate my views. The question is very fully discussed by the supreme court of Kansas in *Markham v. Cornell,* 136 Kan. 884, 18 P. (2d) 158.

Succession to the office of governor is provided for in the constitution in case of the "removal, resignation, death, or disability of the governor." It can not in truth or in reason be said that any of these conditions existed by reason of the governor's absence in Washington city.

I am aware that there has existed a general impression that, the moment a governor crosses the state line, his official capacity is suspended. That impression prevailed for a long time as to the capacity of the president of the United States. The Federal constitution, in language not essentially different from that found in our own, provides for the succession of the vice-president in case of the removal, death, resignation, or inability of the president to discharge the powers and duties of his office. We know that, during recent years, the president has gone out of the country without any claim that, in doing so, his functions were temporarily suspended. The constitutions in many of the states specifically provide for the execution of the duties of the governor by the lieutenant-governor or some other official during his absence from the state. Decisions based on these constitutions have no force, of course, as precedent here. Under present day con-

ditions, no good reason exists for a rule that would confine the governor to the limits of the state or permit him to cross the state line only at the risk of a disruption of his policies.